IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                         No. CR 06-2369 JB

REBECCA BARELA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on Defendant Rebecca Barela's Appeal of Detention Order, filed April 9, 2007 (Doc. 16)("Barela's Appeal"). The Court held a hearing on the appeal on April 19, 2007. The primary issues are whether the Court should affirm the United States Magistrate Judges' orders detaining Barela until trial and denying Barela's request to reconsider the detention order. Because, after a careful review of the date and disposition of the state charges against her, and given her recent performance on state probation, the Court concludes that it can create conditions of release that minimize to acceptable levels her risk of flight and potential danger to the community, and because the parties have agreed that Barela may be released on conditions pending trial, the Court will overrule the Magistrate Judges' rulings and release Barela subject to conditions.

**FACTUAL BACKGROUND**

    On November 16, 2006, a federal grand jury returned an indictment charging Barela with unlawful possession of a firearm after having been convicted of felonious possession of a controlled substance in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). See Indictment, filed November 15,

2006 (Doc. 1). Barela was arrested on February 2, 2007 and made her first appearance in federal court on February 5, 2007. See Clerk's Minutes, filed February 5, 2007 (Doc. 2).

   **1.     Detention Procedure.**

On February 5, 2007, the United States filed a motion requesting that Barela be detained pending trial on the charges for which she was indicted. See Motion for Detention, filed February 5, 2007 (Doc. 4). In response to the United States' motion, Barela, represented by her attorney at the time, Mr. Charles S. Aspinwall, waived her right to a detention hearing -- as would otherwise be required pursuant to 18 U.S.C. § 3142(f) -- and agreed to be held in custody pending trial. See Waiver of Detention Hearing, filed February 7, 2007 (Doc. 7). Despite Barela's waiver, however, Mr. Aspinwall noted at the February 7, 2007 arraignment hearing that Pretrial Services recommended Barela be released on her own recognizance. See Recording of Hearing at 9:34:10-9:34:15 (Aspinwall)(recorded February 7, 2007)("February 7 Recording"). In response, the United States' counsel stated that the United States agreed with Pretrial Services' recommendation. See id. at 9:34:27-9:34:33 (Valencia).

At the February 7, 2007 hearing, the Honorable Robert H. Scott, United States Magistrate Judge, acknowledged the parties' position regarding Barela's release, but entered an order granting the United States' motion and detaining Barela pending trial. See Order of Detention Pending Trial, filed February 7, 2007 (Doc. 10). Judge Scott's order indicated that Barela should be detained "based on her past criminal charges" and made no reference to her waiver. Id. at 1. In light of the position that the United States and Pretrial Services took in favor of release, however, Judge Scott indicated that the parties could file a joint motion for reconsideration and that he would review his detention decision in the context of a more fully developed record. See February 7 Recording at

9:36:20-9:36:30 (Scott, J.).

On March 21, 2007, Barela filed a motion for reconsideration of Judge Scott's detention order and requested that the Court release her to a halfway house. See Motion to Reconsider Order of Detention ¶ 3, at 2, filed March 21, 2007 (Doc. 14). Neither the United States nor Pretrial Services opposed Barela's motion for reconsideration. See id. ¶ 4, at 2. On April 2, 2007, the Honorable Lorenzo F. Garcia, Chief United States Magistrate Judge, denied Barela's motion for reconsideration. See Order Denying Modification of Detention Order, filed April 2, 2007 (Doc. 15)("Garcia Order"). In denying Barela's motion without a hearing, Judge Garcia noted that Barela's criminal history consists, in part, of numerous crimes involving domestic violence and substance abuse, that she has previously failed to appear for court appointments, and that she has performed poorly while on probation in the past. See id. at 1. Judge Garcia reasoned that, under these circumstances, Barela had not overcome the rebuttable presumption that she poses a risk of flight and a danger to the community. See id. at 2.

### 2. **Pretrial Services' Report.**

Pretrial Services prepared a report containing information about Barela's personal history and family ties, her employment history and financial resources, her health, her prior criminal record, and Pretrial Services' assessment regarding her flight risk and the danger she poses to the community. See Pretrial Services Report ("PSR"). United States Probation Officer Andrew F. Selph signed the report and dated it February 6, 2007. See id. at 3.

#### a. **Barela's History, Residence, and Family Ties.**

Barela was born on January 14, 1952 in Amarillo, Texas. See PSR, Part 1, at 1. She has lived in New Mexico since 1954 and has resided in Albuquerque since 1982. See id. Barela has

resided at 8620 Northeastern NE, #5, Albuquerque, New Mexico 87112, since her release from state prison on September 28, 2006, and maintains both a residential and a mobile telephone number. See id. State of New Mexico Probation Officer Jeremy Grob is currently supervising Barela and confirmed her current residence; Barela's sister, Suzanne Price, confirmed Barela's current residence and her residence history. See id.

Barela reported that her parents, Marguerite and William Jolly, live in Albuquerque and that she has three sisters: Price, who lives in Albuquerque, one sister who lives in Las Cruces, New Mexico, and one sister who lives in Germantown, Tennessee. See id. Barela informed Pretrial Services that she was married to Steve Barela from 1973 through 1987, and that the marriage produced one daughter; her daughter is thirty-one years old and lives in Albuquerque. See id. Barela reported one other relationship, which she described as abusive, with William Foderado. See id.

Barela indicated that she is in contact with her parents and with Price several times a week, that she has seasonal contact with her out-of-town sisters, and that she is not in contact with her daughter. See id. Price confirmed Barela's biographical and family information, and expressed willingness to assist Barela comply with any imposed conditions of release. See id.

### b. Employment History and Financial Resources.

Barela indicated that she graduated from Grants High School in Grants, New Mexico in 1970 and that, before being detained, she was enrolled in a medical billing clerk program at Central New Mexico Community College in Albuquerque. See PSR, Part 2, at 1; Barela's Appeal ¶ 10, at 2. Barela stated that, since October 2006, she had been employed as a clerk at Thrift Town in Albuquerque. See PSR, Part 2, at 1. Before working at Thrift Town, Barela explained that she had worked as a shipping clerk for Bright Ideas promotional products from June 2005 through February

2006. See id. Barela also stated that she had previously worked as a parimutuel teller for the Downs at Albuquerque and as an accounts payable clerk for St. Joseph's Hospital in Albuquerque, but was unable to recall the dates during which she was employed at those locations. See id. Price verified Barela's educational and employment history. See id.

Barela reported that she earns $1,000.00 per month. See id., Part 2, at 2. She stated that she owns two automobiles: (i) an inoperative 1993 Mercury Sable valued at approximately $500.00; and (ii) a 1994 Chrysler Concord valued at approximately $1,000.00. See id. Barela identified her monthly expenditures as $650.00 for rent, $150.00 for living expenses, $8.00 for medications, $80.00 for transportation costs, and $75.00 for probation costs. See id. She reported no other assets or liabilities. See id. Price partially verified Barela's financial assets and liabilities. See id.

      **c.**     **Health.**

Barela stated that she is in good physical and mental health, although she has been prescribed medication for high blood pressure. See id., Part 3, at 2. Barela admitted that she first used methamphetamine at about age thirty-five, and that she was a daily user at the time of her arrest on May 24, 2006. See id. She reported that she suffered from an alcohol abuse problem from 1982 through 1998. See id.

Price confirmed Barela's health status, acknowledged Barela's substance abuse history, and added that, in recent years, Barela has also endured significant dental problems. See id. Grob verified that, since Barela's release from state custody in September 2006, she has submitted to monthly urine testing and been involved in weekly substance abuse counseling. See id.

      **d.**     **Criminal Record.**

A review of local records and the National Crime Information Center database revealed that

-5-

Barela has an extensive criminal-offense history. See PSR, Attachment A, Prior Criminal Record ("PCR"). Barela has a Federal Bureau of Investigation number and an Albuquerque Police Department number. See id. Barela's criminal offenses generally fall into three categories: (i) domestic violence offenses; (ii) offenses involving controlled substances; and (iii) driving offenses, often involving alcohol or controlled substances.

Barela has been charged with domestic violence offenses at least five times. These charges include: (i) aggravated domestic assault on October 31, 1988; (ii) domestic battery on July 11, 1993; (iii) domestic battery on May 12, 1996; (iv) aggravated domestic battery on June 3, 1997; and (v) domestic battery on August 9, 1997. See id. at 1. In each case, the charges against Barela were dismissed. See id. Barela represents that all five domestic violence incidents involved altercations between herself and Foderado. See Transcript at 2:7-8 (Oliveros)(taken April 19, 2007)("Transcript").[1]

Barela has been charged with controlled substances offenses at least three times. The charges include: (i) possession of methamphetamine, marijuana, and drug paraphernalia on December 14, 1996; (ii) manufacture of methamphetamine and possession of a controlled substance and drug paraphernalia on August 2, 2003; and (iii) possession of methamphetamine on December 2, 2004. See PCR at 1-2. Barela pled guilty to the charges related to the December 14, 1996 incident and to the possession charges related to the August 2, 2003 incident. See id. at 1-2. The manufacturing charge related to the August 2, 2003 incident was dismissed, and the state prosecutor filed a nolle prosequi in association with the charge related to the December 2, 2004 incident. See id. at 2.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Barela has been charged with driving offenses, often involving alcohol or controlled substances, at least four times. These charges include: (i) driving while intoxicated on July 1, 1989; (ii) driving while intoxicated and possession of a controlled substance on May 26, 1990; (iii) driving while intoxicated, reckless driving, and driving with an open container of alcohol on March 3, 1998; and (iv) driving without a registration or insurance on July 12, 2004. See id. at 1-2. Barela pled guilty to a speeding violation in association with the July 1, 1989 incident, and the driving while intoxicated charge against her was dismissed. See id. at 1. Barela pled guilty to driving while intoxicated in association with the May 26, 1990 incident, and the possession of a controlled substance charge against her was dismissed. See id. Barela pled guilty to the charges associated with the March 3, 1998 incident. See id. Barela pled guilty to the charges associated with the July 12, 2004 incident. See id.

Barela's record indicates that she violated her state probation conditions at least once, on March 30, 1998, and, on January 6, 1999, she received an unsatisfactory probation discharge. See id. During the period between February 18, 1991 and April 7, 1998, Barela also failed to appear for court on at least four occasions related to traffic matters. See id. at 2. More recently, Grob advised that Barela has been compliant and is doing "reasonably well" under supervision since her release from state prison in September 2006. See id.

### e. Pretrial Services' Assessment.

In assessing Barela's risk of nonappearance and her potential danger to the community, Pretrial Services expressed several concerns. Pretrial Services cited Barela's previous failures to appear for court dates and her history of poor performance under community supervision as factors suggesting a risk of non-appearance. See PSR, Part 5, at 2. Pretrial Services also noted that the

nature of the firearm offense with which Barela is charged, her criminal history, and her problems with substance abuse are all factors that suggest she might be a danger to the community. See id. Nevertheless, Pretrial Services concluded that conditions of pretrial release are available, and may be fashioned adequately, to manage the risks that Barela poses. See id., Part 6, at 2.

## PROCEDURAL BACKGROUND

On April 9, 2007, Barela filed her appeal of the Magistrate Judges' detention orders. Barela maintains that, "[t]o the extent possible, [she] wishes to resume the life she had prior to the federal indictment and will promise to abide by all of the conditions of release imposed by the Court." Barela's Appeal ¶ 11, at 2. At the time Barela filed her appeal, the United States maintained that it opposed Barela's release. See id. ¶ 12, at 2. Barela represents that Selph was out of the office through April 16, 2007, and therefore she was unable to confirm Pretrial Services' position on her request to be released before filing this appeal. See id. ¶ 13, at 2-3.

At the hearing on this appeal, the parties conferred with each other and with Pretrial Services, and agreed that Barela could be released to the La Pasada Halfway House in Albuquerque. See Transcript at 2:22-25 (Oliveros). The parties also agreed that Barela would maintain all the current terms of her state probation. See id. at 2:25-3:2 (Oliveros).

## ANALYSIS

A court must order the pretrial detention of a defendant if, after a detention hearing, the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). See Reno v. Koray, 515 U.S. 50, 57 (1995)(quoting 18 U.S.C. § 3142(e) and noting that, if the court finds no conditions that will assure the defendant's appearance and the public's safety, "the court

'shall order the detention of the person'")(emphasis added). Because, after a careful review of the date and disposition of the state charges against her, and given her recent performance on state probation, the Court concludes that it can create conditions of release that minimize to acceptable levels her risk of flight and potential danger to the community, and because the parties have agreed that Barela may be released on conditions pending trial, the Court will overrule the Magistrate Judges' rulings and release Barela subject to conditions.

### 1. Risk of Flight.

Judge Garcia correctly noted that Barela had previously failed to appear for court appointments and performed poorly while on probation in the past. See Garcia Order at 1-2. Those failures, however, dealt with a probation violation in March 1998, and an unsatisfactory dismissal from probation in January 1999. See PCR at 1. The Court believes that her performance under more recent state probation for the state charges related to the federal offense at issue in this case is more relevant to its analysis. On that latest probation, she appears to be doing well. Grob verified that, since Barela's release from state custody in September 2006, she has submitted to monthly urine testing and been involved in weekly substance abuse counseling. See PSR, Part 3, at 2. Grob advised that, in accordance with her current supervision, Barela has been compliant and is doing "reasonably well." PCR at 2.

Barela represents that she understands and appreciates the serious consequences of flight and the effect it would have on her ability to defend herself against the charge contained in the federal indictment. See Barela's Appeal ¶ 10, at 2. Barela also has strong ties to New Mexico. She has lived in the state almost her entire life, she has resided in Albuquerque for over twenty years, and she is in regular contact with her parents and Price, all of whom live in Albuquerque. Moreover,

Price has expressed willingness to assist Barela comply with any conditions of release.  See PSR, Part 1, at 1.  While there is always a risk of flight and non-appearance, the Court believes that the factors in this case suggest the Court can fashion a set of conditions that will reduce the risk of flight and ensure that Barela appears for proceedings in this case.

### 2. **Risk of Harm.**

The Court has carefully reviewed Barela's criminal history.  While Barela has had many brushes with the law, and she poses some risk of danger to the community, the Court believes that it can fashion conditions that will minimize that risk.  Specifically, the Court believes that it can tailor conditions that, with precision, deal with the problems she has presented in the past without taking away her liberty completely.

First, the Court does not believe that Barela presents a general risk of violence to society; her history of violent incidents appears to be limited to the context of her domestic relationship with Foderado.  The Court also notes that each of the domestic violence offenses with which she was charged was eventually dismissed.  Finally, Barela indicates that she does not currently have a domestic partner of any kind.  See Transcript at 3:14-16 (Oliveros).

The impression that the Court gets from these incidents is that Barela has difficulty managing her relationship with Foderado.  The Court believes that it can fashion remedies that will protect society and Foderado, and yet preserve Barela's liberty interest.  The Court will order Barela to stay away from, and not have contact with, Foderado.  At the hearing on Barela's appeal, Barela indicated that she had no objection to this condition of release.  See Transcript at 4:5-6 (Oliveros).

The Court's second concern relates to Barela's driving offenses, specifically those involving alcohol and other controlled substances.  Barela was convicted twice for driving while intoxicated,

once in 1990 and again in 1998. One conviction was seventeen years ago, and the other is nine years old. Barela has admitted that she had a problem with alcohol from 1982 through 1998. See PSR, Part 3, at 2.

While the Court does not want, in any way, to minimize the seriousness of the two driving-while-intoxicated convictions, they are beginning to be in the past. Moreover, it is the Court's understanding that, while in La Pasada's custody, Barela will not be permitted to drive an automobile. In any case, the Court believes that it can fashion a set of conditions that will reduce the risk of another driving-while-intoxicated offense. The Court will preclude Barela from driving at all, she must refrain from the possession and consumption of alcohol, and she must not frequent any places whose primary function is the sale of alcohol. At the hearing on Barela's appeal, Barela indicated that she had no objection to this condition. See Transcript at 4:20-21 (Oliveros).

The Court's final concern relates to Barela's substance abuse history. While the Court recognizes that the use of controlled substances poses an inherent danger to the community, it notes that Barela's drug offenses appear to be possession offenses and not trafficking offenses. The Court also recognizes that, since being released from state custody in September 2006, Barela has submitted to monthly urine testing and has been attending weekly substance abuse counseling sessions. See PSR, Part 3, at 2. The parties have agreed that Barela's release will continue to be subject to the conditions of her state probation. The Court believes that ongoing drug testing and counseling will reduce the danger that Barela's substance abuse problems present to manageable levels.

The Court believes that the conditions of Barela's state probation, combined with the additional conditions the Court has imposed, are sufficient to assure Barela's appearance and the

public's safety. The Court does not find that Barela poses a risk of flight or a danger to the community for which it is unable to fashion a set of conditions that will minimize those risks or reduce them to acceptable levels. The Court will release Barela to the La Pasada Halfway House pending trial subject to the conditions enumerated in this Memorandum Opinion and Order.

**IT IS ORDERED** that the Appeal of the Detention Order is heard. The Court will order the Defendant released to the custody of the La Pasada Halfway House on the standard conditions, the mandatory conditions, and the following special conditions: (i) Barela will not have contact of any kind with William Foderado; (ii) she will not drive any vehicle; and (iii) she will not possess or consume alcohol or frequent places where the primary item for sale is alcohol. Barela will also remain subject to all the conditions of her state probation.

                                                            _____
                                                            UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
Louis E. Valencia
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Charles Spencer Aspinwall
Charles S. Aspinwall LLC
Los Lunas, New Mexico

-- and --

Robert J. Gorence
Louren M. Oliveros
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant*